UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DAVID JOHN GONYA,                    )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          No. 3:14-CV-450-TAV-HBG
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security,  )
                                     )
          Defendant.                 )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. David John Gonya ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On July 21, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began February 1, 2007. [Tr. 146]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 85]. On January 9, 2013, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 28-64]. On May 16, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 8-10]. The Appeals Council denied the Plaintiff's request for review [1-3]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on September 30, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirement of the Social Security Act through December 31, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: diabetes mellitus and affective mood disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than light work as defined in 20 CFR 404.1567(c) and 416.967(c) except lift/carry up to 20 pounds frequently and 21-50 pounds occasionally. Claimant is able to sit up to three hours at one time without interruption for a total of six hours out of an 8-hour workday. He has no limitation in standing and walking. Claimant is able to perform manipulative activities frequently. He is able to understand and remember simple and detailed tasks, but is unable to make independent decisions at an executive level. He is able to concentrate and persist for the previously described tasks for two-hour periods in an 8-hour workday with routine breaks. He is unable to interact with the public but is able to interact with coworkers and supervisors. He is able to work better with things

2

rather than people. He is able to adapt to change and set independent goals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 9, 1967 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)),

[Tr. 13-21].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

3

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

4

404.1520).  The claimant bears the burden of proof at the first four steps.  Id.  The burden shifts

to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there

is work available in the national economy that the claimant could perform.  Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146

(1987)).


## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed.  42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th

Cir. 2004).    Substantial  evidence  is  "more  than  a  scintilla  of  evidence  but  less  than  a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981))

(internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have

decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

(6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice'

5

within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).


IV.     **MEDICAL EVIDENCE**

A.     **Evidence regarding physical impairments**

The Plaintiff was diagnosed with diabetes mellitus on January 16, 2008, after presenting to the emergency room for nausea, vomiting, weakness, and polydipsia. [Tr. 339]. In addition to being found in acute renal failure, the Plaintiff's hemoglobin A1c blood test showed that he had experienced uncontrolled blood sugar levels for about three months. [Id.]. The Plaintiff was referred to Cherokee Health Systems to establish care for diabetic management. [Id.]. Before he could attend his first appointment, the Plaintiff returned to the emergency room on January 25, 2008, with complaints of blurred vision and a headache. [Tr. 326]. The Plaintiff's insulin was

6

increased as his blood sugar was at 308 mg/dL. [Tr. 326-27].

The Plaintiff presented to Cherokee Health Systems on February 6, 2008. [Tr. 544]. Aggressive sugar control maintenance was recommended, and the Plaintiff was prescribed 30 units of Levemir at night with 6 units of NovoLog. [Id.]. The Plaintiff's hemoglobin A1c level was normal at 6.0 by February 12, 2008. [Tr. 454]. On May 5, 2008, the Plaintiff's hemoglobin A1c level was 6.8, which was noted as a significant improvement. [Tr. 539]. The Plaintiff continued regular treatment at Cherokee Health Systems where he received free samples of insulin due to a lack of healthcare insurance. [Tr. 538-39]. The Plaintiff returned on August 12, 2008 for a follow-up. [Tr. 536]. Treatment notes documented results from an eye exam in which no diabetes mellitus eye damage was found and the Plaintiff was prescribed glasses. [Id.]. The Plaintiff's hemoglobin A1c level remained normal at 6.4. [Tr. 451]. Other than the Plaintiff experiencing back pain and myalgia, his physical examination was largely unremarkable. [Tr. 536-37]. The Plaintiff received new samples of Levemir and NovoLog, and while a nerve conduction tests were recommended, the Plaintiff was unable to afford testing due to a lack of healthcare insurance. [Tr. 537].

The Plaintiff re-established care with Hal Moncier, M.D., at Cherokee Health Systems on July 25, 2011, after the Plaintiff had apparently gone two years without medical attention. [Tr. 533]. The Plaintiff attributed this gap in treatment to having received enough insulin to last him the past two years. [Id.]. Upon examination, the Plaintiff was positive for bilateral paresthesia in his toes and fingers and complained of chronic muscle aches all over his body. [Tr. 534]. The Plaintiff received samples of insulin and a NovoLog sliding scale. [Tr. 535]. On August 15, 2011, the Plaintiff returned for a follow-up at which time he reported his blood sugar had increased to 180 mg/dL, although he admitted to not checking his blood sugar four times a day as

7

instructed. [Tr. 530]. The Plaintiff also related body aches and tingling in his legs. [Id.]. In addition to receiving more samples of Levemir and NovoLog, the Plaintiff was also given Neurontin to help with his pain and tingling. [Tr. 531]. Treatment notes from a follow-up appointment at Cherokee Health Systems on March 15, 2012, document that the Plaintiff's diabetes was under control but he was still experiencing blurred vision, burning in his extremities, shakiness, and a drop in his blood sugar at night. [Tr. 690].

On June 22, 2012, Dr. Moncier wrote a brief, one sentence letter stating that the Plaintiff "is completely disabled and unable to work." [Tr. 616]. The following month, on July 24, 2012, Dr. Moncier completed a "Medical Source Statement," wherein he assessed the degree of the Plaintiff's functional limitations by answering a variety of multiple-choice and short answer questions. [Tr. 618-23]. Dr. Moncier opined that the Plaintiff suffered from uncontrolled type 1 diabetes, sudden visual loss (intermittent and new onset), benign prostatic hyperplasia, and homelessness. [Tr. 618]. As the result of the Plaintiff's diabetic condition, he experienced confusion secondary to low and/or high blood sugar, anxiety, and depression. [Tr. 618-19]. In addition, the Plaintiff's impairments produced "good" and "bad" days. [Tr. 622]. Dr. Moncier opined that the Plaintiff had marked limitation in his ability to deal with work stress and experienced drowsiness and confusion with his medication. [Tr. 619]. During a regular eight hour workday, Dr. Moncier found that the Plaintiff could sit for more than three hours before having to alternate to standing or walking, but could sit for more than six hours total and would need to rest or lay down for less than one hour. [Tr. 619-21]. In addition, the Plaintiff could carry or lift 21 to 50 pounds occasionally and up to 20 pounds frequently and could frequently reach, handle, and finger with both hands. [Tr. 621-22]. Finally, Dr. Moncier opined that on average, the Plaintiff would likely be absent from work more than three days a month as a result

8

of his impairments. [Tr. 622].

A consultative examination was performed by Brandon Cincere, M.D., on June 13, 2010. [Tr. 653-54]. The Plaintiff reported two mild strokes with no residual deficits, but related decrease use of his right hand and type 1 diabetes. [Tr. 653]. Upon examination, the Plaintiff's vision was 20/40 with corrective lenses, he demonstrated full range of motion, and his motor strength in his upper and lower extremities bilaterally was 4+/5. [Tr. 654]. The Plaintiff also ambulated with normal gait, could toe and heel walk, do a full squat, and was negative for straight leg raises. [Id.]. The only recommendation Dr. Cincere made was the need for blood sugar control. [Id.]. A Medical Consultant Analysis was performed the next day by state agency physician Nathaniel Robinson, M.D., who found no evidence of liver problems or mild strokes in the record. [Tr. 680]. Dr. Robinson opined that the Plaintiff's allegations were only partially credible because there was no evidence of myelopathy or radiculopathy, the Plaintiff's range of motion and strength were normal, and his blood sugar was within normal limits with a hemoglobin A1c level of 6.0. [Id.].

A second consultative examination was performed by Elizabeth Hartmann, M.D., on November 17, 2011. [Tr. 489-92]. Upon examination, the Plaintiff's vision was 20/50 in his right eye and 20/40 in his left eye with corrective lenses. [Tr. 4941]. The Plaintiff had normal range of motion, his gait and station were normal, and he exhibited normal strength in his upper and lower extremities, but experienced decreased sensation to light touch in his feet. [Id.]. Based upon the foregoing, Dr. Hartman opined that during an eight-hour workday, the Plaintiff could continuously lift and carry up to 10 pounds, sit on a regular basis, stand with regular breaks, and could frequently walk with frequent breaks. [Tr. 492]. In addition, the Plaintiff could frequently stoop, kneel, crawl, and crouch as well as manipulate papers, handle, push, pull,

9

and reach with his hands. [Id.].

State agency physician Kanika Chaudhuri, M.D., completed a "Physical Residual Functional Capacity Assessment" on November 29, 2011, wherein she opined that the Plaintiff could lift or carry up to 50 pounds occasionally and up to 25 pounds frequently, and he could stand, walk, or sit for six hours total in an eight-hour workday. [Tr. 506]. The assessment was affirmed by a second reviewing state agency physician on February 14, 2012. [Tr. 567].

**B.      Evidence regarding mental impairments**

During the Plaintiff's initial visit to Cherokee Health Systems on February 6, 2008, a behavioral consultation was recommended. [Tr. 447]. The Plaintiff presented for an intake on February 26, 2008, at which time the Plaintiff related a history of anxiety that had exacerbated in the past six months likely due to his diabetes. [Tr. 564]. The Plaintiff was diagnosed with an anxiety disorder [Id.] and underwent a psychiatry intake the following month to begin treating his anxiety by medication [Tr. 561-62]. The Plaintiff returned several times in April and once in July 2008, with continued feelings of anxiety and depression, resulting in medication changes. [Tr. 441-42, 437-38].

A "Psychological Evaluation Report" was completed by Mary Barker, M.S., on June 9, 2010. [Tr. 648-51]. Ms. Barker diagnosed the Plaintiff was major depressive disorder (recurrent, moderate, chronic) and panic disorder with agoraphobia. [Tr. 651]. She opined that the Plaintiff's ability to understand and remember was mildly impaired, his ability to concentrate, persistent, and adapt was moderately impaired, and his ability to socially interact was moderately to markedly impaired. [Id.].

On October 18, 2011, the Plaintiff presented for a consultative examination with Ellen Denny, PhD. [Tr. 458-62]. Dr. Denny diagnosed the Plaintiff with major depressive disorder,

10

generalized anxiety disorder, and a personality disorder. [Tr. 461]. Dr. Denny opined that that Plaintiff displayed only mild limitations in his ability to sustain concentration and moderate limitations in his ability to understand and remember, interact with other, and adapt to changes. [Id.].

A "Mental Residual Functional Capacity Assessment" was completed by a state agency psychologist on July 2, 2010, wherein the psychologist opined that the Plaintiff could understand and remember simple and detailed instructions, but could not make independent decisions at the executive level, could maintain attention and concentration for periods of at least a two hour duration during an eight-hour workday with routine breaks, could interact appropriately with co-workers and supervisors, but would do better working with things rather than people, and could adapt to change and set independent goals. [Tr. 676]. A second "Mental Residual Functional Capacity Assessment" was completed by a different state agency psychologist on October 27, 2011, wherein the psychologist opined that the Plaintiff could understand and perform simple and detailed (but not detailed multi-step) tasks, could sustain concentration and persistence for an eight-hour workday with customary breaks, could interact appropriately with the public, supervisors, and co-workers, and could set simple goals and adapt to infrequent workplace changes. [Tr. 480]. A third state agency psychologist completed a "Mental Residual Functional Capacity Assessment" on February 16, 2012, mirroring the findings of the first assessment. [Tr. 584].

## V.     POSITIONS OF THE PARTIES

The Plaintiff alleges two assignments of error committed by the ALJ. First, the Plaintiff contends that the ALJ erred in his assessment of the Plaintiff's credibility. [Doc. 16 at 23-24].

Second, the Plaintiff argues that the ALJ failed to properly apply the treating physician rule to Plaintiff's treating physician, Dr. Moncier. [Id. at 25-26].

The Government responds that substantial evidence supports the ALJ's credibility assessment as the ALJ properly evaluated the Plaintiff's credibility in a manner consistent with agency regulations and policies. [Doc. 19 at 4-10]. The Government also argues that the ALJ properly weighed and gave good reason for rejecting certain portions of Dr. Moncier's opinion. [Id. at 10-12].

## VI. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Credibility Assessment

The Plaintiff contends that the ALJ erred in his credibility assessment in regard to problems the Plaintiff experienced with his vision, hands, and daily activities. [Doc. 16 at 23-24]. In addition, the Plaintiff argues that the ALJ ignored the credibility opinions offered by Dr. Denny and Ms. Baker. [Id. at 24].

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." Walters, 127 F.3d at 531. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In the credibility portion of the ALJ's decision, the ALJ recalled the Plaintiff's testimony "that he lived with his girlfriend and required help with bathing and dressing because his hands were numb and his vision was blurred." [Tr. 19]. The ALJ found the Plaintiff's assertion regarding his vision was "unlikely in light of the fact that eye exams show corrected vision of 20/40." [Id.]. As to the Plaintiff's allegation about his hands, the ALJ explained that the Plaintiff's physical examinations reflected "no indication that he has bilateral hand problems." [Id.]. With regard to the Plaintiff's allegation of minimal daily living activities, the ALJ observed that the Plaintiff "has a history of living in a tent and such residence requires minimal household maintenance." [Id.].

13

The Plaintiff argues that the ALJ's credibility finding regarding his vision problems is inconsistent with the record which demonstrates multiple instances documenting vision problems caused by the Plaintiff's diabetic condition. [Doc. 16 at 23]. Specifically, the Plaintiff points to treatment notes from January 25, 2008, February 6, 2008, January 20, 2012, and March 15, 2012. [Id. (citing Tr. 326, 447, 524, 690)]. The Commissioner acknowledges the Plaintiff's reports of blurred vision, but argues that the problem only occurs when the Plaintiff's blood sugar is not controlled. [Doc. 19 at 6]. Moreover, the Commissioner contends that the Plaintiff's eye exam results, which demonstrated 20/40 corrected vision, is evidence reasonably relied upon by the ALJ in finding the Plaintiff's statements about his vision less than fully credible. [Id. at 6-7].

A review of the treatment notes cited by the Plaintiff indeed corresponds to instances where the Plaintiff's blood sugar was elevated. For example, on January 25, 2008, when the Plaintiff presented to the emergency room with blurred vision, his blood sugar was 308 mg/dL. [Tr. 326]. This instance of blurred vision was documented on February 6, 2008, during the Plaintiff's initial visit to Cherokee Health Systems to establish care for his diabetes. [Tr. 447]. On January 20, 2012, the Plaintiff reported to Dr. Moncier that during a 15 hour period, he experienced blurred vision and then a loss of vision. [Tr. 524]. Dr. Moncier noted that the Plaintiff was having difficulty controlling his blood sugar at that time. [Id.]. Finally, the Plaintiff reported blurred vision again on March 15, 2012, concurrent with complaints of hypoglycemic episodes. [Tr. 690]. While the Plaintiff's vision problems are no minor matter, this evidence is not indicative that the Plaintiff suffered visual problems generally or to the extent that the Plaintiff needed help dressing and bathing on a regular basis as alleged. Instead, the evidence indicates that over the course of a four year period, the Plaintiff's vision was affected several times as a result of uncontrolled blood sugar. The Court finds this evidence, in

14

combination with the Plaintiff's eye exam in June 2010, which revealed 20/40 corrected vision [Tr. 654], and the lack of diabetes mellitus eye damage [Tr. 536], amounts to substantial evidence supporting the ALJ's conclusion that the Plaintiff's vision was not as problematic as alleged.

The Plaintiff also contends that complaints about his hands were improperly rejected. [Doc. 16 at 23]. The Plaintiff relies on Dr. Hartmann's finding that he was limited to frequent use of his hands, Dr. Cincere's notation of 4+/5 motor strength in his bilateral upper extremities, and Dr. Moncier's office records documenting that he was positive for bilateral finger paresthesia, as evidence that he was more limited with the use of his hands that found by the ALJ. [Id. (citing Tr. 492, 654, 534)]. The Commissioner argues that this evidence is actually consistent with the ALJ's restriction to frequent manipulation. [Doc. 19 at 7].

The Court agrees with the Commissioner and finds that the Plaintiff's reliance on the evidence is misplaced. Dr. Hartmann's finding that the Plaintiff was limited to frequent use of his hands and Dr. Cincere's finding of minimal decrease in motor strength in the Plaintiff's bilateral upper extremities coincides with the ALJ's assessment that the Plaintiff was limited to frequent manipulation with his hands. Moreover, while Dr. Moncier noted bilateral finger paresthesia upon examination [Tr. 534], he opined that the Plaintiff could frequently reach, handle and finger with both hands. [Tr. 621-22]. Thus, the evidence relied upon by the Plaintiff supports the ALJ's restriction of frequent manipulation.

Additionally, the Plaintiff challenges the ALJ's finding that the Plaintiff's living situation required "minimal household maintenance." [Doc. 16 at 24]. The Plaintiff argues that the ALJ offers no explanation or example as to what constitutes "minimal household maintenance," leaving a subsequent reviewer to question the rational of the ALJ's finding. [Id.]. The

15

Commissioner explains that the ALJ's was not drawing a negative inference from the Plaintiff's reported daily living activity, but was observing that because the Plaintiff lived in a tent, there was little in the way of household maintenance, thereby rendering the Plaintiff's allegations and testimony regarding the extent and ability to perform daily activities less probative. [Doc. 19 at 8].

The Court concurs with the Commissioner. Treatment notes document a history of homelessness as the Plaintiff related on more than one occasion that he lived in a tent. [Tr. 459, 483, 682]. Thus, while the Plaintiff reported he could do some routine household chores, take out the garbage, and prepare simple meals [Tr. 459], the ALJ reasonably concluded that the Plaintiff's allegation of daily activities was less probative given the fact that the Plaintiff resided in a tent, which required far less household maintenance than a traditional home setting. The Court finds that the ALJ was not required to expound upon what "minimal household maintenance" entailed.

Nor is the Court persuaded by the Plaintiff's contention that the ALJ erred by not mentioning the Plaintiff's testimony that his girlfriend's daughter does much of the housework when the Plaintiff stays with his girlfriend. [Doc. 16 at 24]. During the administrative hearing, the Plaintiff testified that his lives "in and out" of his girlfriend's home, and that his girlfriend's daughter does most of the cooking and cleaning. [Tr. 40, 52]. This testimony does not undermine the ALJ's credibility assessment, because the ALJ specifically found that the Plaintiff had moderate limitations in his ability to perform daily activities. [Tr. 14]. Moreover, it is well-settled within the Sixth Circuit that "an ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion." Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 507–08 (6th Cir. 2006).

16

Finally, the Plaintiff argues that the ALJ ignored the credibility opinions offered by Ms. Barker, who noted that the Plaintiff was cooperative, made good eye contact, and his affect was "fairly appropriate" during the consultative examination [Tr. 649], and Dr. Denny, who found no evidence that the Plaintiff was malingering in his self-report [Tr. 458]. [Doc. 16 at 24]. The Commissioner states that regardless of these examiner's statements, both examiners found that the Plaintiff had no more than moderate mental impairments, and therefore, the examiners' opinions do not undermine the ALJ's residual functional capacity ("RFC") assessment. [Doc. 19 at 9].

The Court finds no merit in the Plaintiff's contention. The Plaintiff relies on Social Security Ruling 96-7p, which provides that when findings are made by state agency medical providers or consultants "on the credibility of the individual's statements about limitations or restrictions due to symptoms," an adjudicator must weigh the opinion and explain the weight assigned to the opinion. 1996 WL 374186, at *8 (July 2, 1996). Ms. Baker's comments, however, were in regard to the Plaintiff's attitude and cooperation during the examination, not the veracity of his reported symptoms or work-related limitations. On the other hand, Dr. Denny's observation speaks to the credibility of the Plaintiff's self-reported limitations. Nonetheless, despite finding that the Plaintiff was not malingering, Dr. Denny opined that that Plaintiff displayed only mild limitations in his ability to sustain concentration and moderate limitations in his ability to understand and remember, interact with other, and adapt to changes. [Tr. 461]. Dr. Denny's assessed limitations were far less restrictive than those alleged by the Plaintiff and are consistent with the RFC limitations assigned by the ALJ. Thus, any failure by the ALJ to specifically weigh Dr. Denny's statement about the Plaintiff's credibility was harmless. See Wilson, 378 F.3d at 546-47.

17

Accordingly, the Court finds the Plaintiff's allegation of error is not well-taken.

**B.      Hal Moncier, M.D.**

The Plaintiff also argues that the ALJ failed to explain with specificity the inconsistencies between Dr. Moncier's findings and other objective evidence in the record that the ALJ referenced in discounting part of Dr. Moncier's opinion.  [Doc. 16 at 26].

In the disability determination, the ALJ stated the following in regard to the treating physician's opinion:

> The claimant's physical capacity limitations are consistent with the medical source statement of Dr. Moncier (first visit January 2012), and the undersigned gives great weight to his opinion, expect as noted below, because the medical record supports his opinion (Exhibit 25F).  The physician limited claimant to frequent lifting up to 20 pounds and occasional lifting of 21-50 pounds.  Dr. Moncier averred claimant was able to perform manipulative activities frequently and likely would be absent from work more than three times per month.  Although Dr. Moncier opined in June 2012 that claimant was "completely disabled and unable to work," the undersigned gives no weight to his opinion of total disability as explained below.  .  .  .    Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability.  Opinions on issues reserved to the commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are support by the record as a whole or contradicted by persuasive evidence.      (20 CFR 404.[]1527(d)(2) and 416.927(d)(2); SSR 96-5p).  The opinion that the claimant would likely be absent from work more than three times a month is likewise given no weight.    This limitation is unexplained, unjustified, inconsistent with the balance of the record and Dr. Moncier's own objective findings, and is therefore entitled to no evidentiary weight.

[Tr. 15-16].

The Plaintiff argues that the ALJ fails to point to any evidence that is "inconsistent" with Dr. Moncier's opinion that the Plaintiff would miss more than three days of work a month, and

that the "failure to point out the inconsistencies and exact objective findings makes it impossible for a reviewing court to determine the basis for the ALJ's decision, and therefore justifies remand." [Doc. 16 at 26]. The Commissioner maintains that the ALJ's explanation for rejecting this part of Dr. Moncier's opinion was sufficiently explained as the ALJ had no duty to accept an opinion that is inconsistent with the record. [Doc 19 at 11-12]. In this regard, the Commissioner argues that there was no mention of the limitation in Dr. Moncier's treatment notes, nor was there any other notations or findings documented by Dr. Moncier that would support a finding that the Plaintiff would miss more than three days of work per month. [Id. at 12].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent

19

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 992 (6th Cir. 2007).

While the Court agrees with the Plaintiff that the ALJ fails to explicitly point to portions of the record that are inconsistent with Dr. Moncier's opinion that the Plaintiff would miss more than three days of work per month, "this Court reviews the record as a whole to determine whether the ALJ's decision is supported by substantial evidence." Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 527 (6th Cir. Oct. 14, 2014) (citing Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The Court finds that the ALJ provided other "good reasons" for rejecting this limited portion of Dr. Moncier's opinion, and the Plaintiff's overall RFC is supported by substantial evidence.

In addition to finding Dr. Moncier's opinion regarding the Plaintiff's work attendance inconsistent with the record, the ALJ also rejected the opinion because Dr. Moncier offered no explanation for his conclusion. Indeed, a review of Dr. Moncier's Medical Source Statement and limited treatment notes do not indicate any evidence, observations, or findings that would explain or justify the number of absences the Plaintiff would incur at work. Prior to completing the Medical Source Statement, Dr. Moncier treated the Plaintiff on several occasions, at which time treatment largely consisted of providing sample insulin and counseling the Plaintiff about checking and maintaining normal blood sugar levels. [Tr. 524-25, 533-35, 688-89]. Unfortunately, Dr. Moncier's brief treating relationship with the Plaintiff fails to offer any insight to the Court that would explain why the Plaintiff would be absent from work for so many

20

days.  The fact that Dr. Moncier, a treating source, rendered a particular finding regarding the Plaintiff's work attendance is inconsequential where the finding is not well-supported.  See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (explaining that the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times").  The Court also observes that no other examining or non-examining source opined such work related limitation.

Moreover, the Court finds that the ALJ's RFC determination is supported by substantial evidence.  The ALJ found the Plaintiff's ability to perform less than light work to be reasonable given Dr. Moncier's overall opinion as well as the opinion of state agency physician Dr. Chaudhuri who opined that the Plaintiff could perform a full range of medium work.  [Tr. 16].  While Dr. Hartmann opined that the Plaintiff could only perform sedentary work, the ALJ explained that the state agency physician's opinion was deserving of "greater weight," because Dr. Hartmann's examination findings were largely unremarkable and her evaluation was based on the Plaintiff's self-report rather than objective evidence. [Tr. 16, 18].  The Court agrees with the ALJ's reasoning as Dr. Hartmann's examination revealed normal findings except for decreased sensation to light touch in the Plaintiff's feet, supra 9-10.  Also notable were observations made by state agency physician Dr. Robinson and consultative examiner Dr. Cincere.  Dr. Robinson found that the Plaintiff's physical impairments were not severe because there was no evidence in the record of mild strokes, as reported by the Plaintiff.  [Tr. 17, 680].  Moreover, Dr. Robinson noted that the Plaintiff's diabetes was generally well controlled with a hemoglobin A1c level of 6.0.  [Id.].  The Court observes that the Plaintiff's lab results, when he followed his prescribed diabetic regimen, produced normal blood sugar levels.  [Tr. 440, 451, 454, 539].  Moreover, Dr. Cincere's consultative examination demonstrated unremarkable

findings and only assessed that the Plaintiff maintain blood sugar control. [Tr. 19, 654]. Finally, the ALJ's assessment of the Plaintiff's credibility, which was found to be supported by substantial evidence as noted above, likewise supports the ALJ's RFC determination. Accordingly, the medical evidence of record, when viewed in totality, does not demonstrate a more restrictive physical RFC than that opined by the ALJ.

Therefore, the Court finds the Plaintiff's allegation of error is without merit.

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [**Doc. 15**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**.

Respectfully submitted,

United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).